IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARIUS WINBORN | ) | CASE NO. |
| 4516 Ashland Avenue | ) | |
| Lorain, Ohio 44053 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| RIDDELL, INC. | ) | **(Jury demand endorsed herein)** |
| 7501 Performance Lane | ) | |
| North Ridgeville, Ohio 44039 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| RIDDELL, INC. | ) | |
| c/o The Prentice-Hall corporation System, Inc. | ) | |
| 50 West Broad Street | ) | |
| Suite 1800 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| BRG SPORTS, INC. | ) | |
| c/o Corporate Creations Network Inc. | ) | |
| 3411 Silverside Road Tatnall Building | ) | |
| Suite 104 | ) | |
| Wilmington, Delaware 19810 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| LEIGH CULLEN | ) | |
| c/o Riddell, Inc. | ) | |
| 7501 Performance Lane | ) | |
| North Ridgeville, Ohio 44039 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Darius Winborn, by and through undersigned counsel, as his Complaint against

Defendants, states and avers the following:

## PARTIES, JURISDICTION & VENUE

1.  Winborn is a resident of the City of Lorain, County of Lorain, State of Ohio.

2.  Defendant Riddell, Inc. ("Riddell") is a Delaware Corporation, with its principal place of business located in Lorain County, Ohio.

3.  Defendant BRG Sports, Inc. ("BRG") is a Delaware Corporation, with its principal place of business located in Lorain County, Ohio.

4.  Defendant BRG owns, operates, and manages all the activities and employees of Riddell.

5.  Upon information and belief, Riddell and BRG share common offices, have common record keeping, and share certain equipment.

6.  Upon information and belief, Riddell and BRG share common management, directors, and boards.

7.  BRG maintains centralized control over Riddell's labor relations and personnel.

8.  Upon information and belief, Riddell and BRG share common ownership.

9.  Upon information and belief, BRG maintains financial control over Riddell.

10. Riddell and BRG are so interrelated that they actually constitute a single integrated enterprise and constitute a joint employer under Ohio law.

11. At all times referenced herein, Winborn was jointly employed by Defendants.

12. Defendant Leigh Cullen is an individual who is a human resources manager at Riddell who acted directly or indirectly in the interest of Riddell.

13. Riddell was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.

14. BRG was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.

15. Cullen was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Winborn is alleging federal law claims regarding the deprivation of Winborn's rights under the American's with Disabilities Act of 1990 as amended.

17. This Court has supplemental jurisdiction over Winborn's state law claims pursuant to 28 U.S.C. § 1367, as Winborn's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

18. Venue is proper pursuant to 28 U.S.C. § 1391.

19. All material events alleged in this Complaint occurred in Lorain County.

20. Within 300 days of the conduct alleged below, Winborn filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2020-01018 against Defendant.

21. On or about September 30, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Winborn regarding the Charge of Discrimination.

22. Winborn received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

23. Winborn filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

24. Winborn has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## **FACTS**

26.   Winborn is a former employee of Defendants.

27.   Winborn was first hired by Defendants on or about April 2, 2018

28.   Winborn worked for Defendants as a Laborer.

29.   On or about June 20, 2019 Winborn suffered a knee injury outside of work.

30.   Despite Winborn's injury, Winborn was qualified for his position.

31.   Winborn's injury prohibited him from standing for long periods of time.

32.   Winborn's injury prohibited him from walking long distances.

33.   Winborn's work as a Laborer required him to stand for long periods of time.

34.   Winborn's work as a Laborer required him to walk long distances.

35.   Winborn's injury substantially limits one or more of his major life activities.

36.   Winborn has a record of his injuries.

37.   Defendants had knowledge of Winborn's injuries.

38.   Defendants had knowledge of Winborn's disabilities.

39.   As a result of his injuries, Winborn is and was considered disabled within the meaning of the Americans with Disabilities Act.

40.   As a result of his injuries, Winborn is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

41.   In the alternative, Defendants perceived Winborn to be disabled.

42.   In the alternative, Defendants perceived Winborn to have physical impairments.

43.   On or about June 20, 2019, Winborn disclosed his disability to his supervisor, Chrissy Sullivan.

44.   On or about June 20, 2019, Winborn requested accommodations for his disabilities.

45.   Winborn requested light duty as an accommodation.

46. Defendants initially approved Winborn for light duty.

47. Defendants did not have an interactive discussion with Winborn to discuss reasonable accommodations.

48. On or about July 10, 2021, Winborn returned to work for light duty.

49. Defendants told Winborn that his light duty work would consist of office work until Winborn could return to his normal work area.

50. Defendants never allowed Winborn to work light duty.

51. Winborn's accommodation request was reasonable.

52. Winborn's accommodation request did not cause an undue hardship on Defendants.

53. Defendants did not determine if Winborn's accommodation request would cause an undue hardship.

54. Defendants have no contemporaneously created documents reflecting any effort to determine if Winborn's accommodation request would cause an undue hardship.

55. After Winborn's accommodation request, no one engaged Winborn in an interactive process to find a reasonable accommodation for Winborn's disability.

56. Defendants violated the American's with Disabilities Act ("ADA") when no one engaged Winborn in an interactive process to find a reasonable accommodation for Winborn's disability.

57. Defendants violated R.C. 4112.01 et seq. when no one engaged Winborn in an interactive process to find a reasonable accommodation for Winborn's disability.

58. On or about July 10, 2019, Winborn sat in the Human Resources office for about an hour.

59. On or about July 10, 2019, Cullen asked Winborn if he had more doctor appointments or if he was going to need more time off.

60. At all times, relevant herein, Cullen had the power to hire and fire Defendant's employees.

61. Winborn replied that he would need more doctor appointments and would need more time off based on his disability.

62. Defendants had knowledge that Winborn's disabilities would require additional time off due to his disabilities.

63. Cullen told Winborn she did not want Winborn to work on light duty.

64. Cullen told Winborn she did not like the "light duty paperwork."

65. Cullen told Winborn to go home.

66. Cullen told Winborn she would call him in 24 hours to talk about his light duty.

67. Cullen did not call Winborn within 24 hours to discuss his light duty.

68. On or about July 13, 2019, Cullen left a voicemail for Winborn and instructed him to call Defendants.

69. On or about July 13, 2019, Winborn called Defendants but was unable to reach Cullen and was forced to leave a voicemail for Cullen.

70. On or about July 13, 2019, Winborn was at his doctor's office.

71. Winborn learned from his doctor that Defendants had cancelled his insurance.

72. Winborn called Cullen, but Cullen would not return Winborn's calls.

73. On or about June 21, 2019 Winborn applied for FMLA leave.

74. Winborn was initially granted FMLA leave from June 21, 2019 until August 6, 2019.

75. On about July 10, 2019 Defendants terminated Winborn's employment while he was out on FMLA leave.

76. Defendants did not terminate similarly situated non-disabled employees who performed to a similar level as Winborn.

77. Defendants knowingly took an adverse employment action against Winborn.

78. Defendants knowingly took an adverse action against Winborn.

79. Defendants intentionally terminated Winborn's employment.

80. Defendants intentionally took an adverse employment action against Winborn.

81. Defendants intentionally took an adverse action against Winborn.

82. Defendants knew that terminating Winborn would cause Winborn harm, including economic harm.

83. Defendants willfully terminated Winborn's employment.

84. Defendants willfully took an adverse employment action against Winborn.

85. Defendants willfully took an adverse action against Winborn.

86. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

87. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

88. There was a causal connection between Winborn's disabilities and Defendants' termination of Winborn.

89. There was a causal connection between Winborn's use of protected leave under FMLA and Defendants' termination of Winborn.

90. As a direct and proximate result of the Defendants' conduct, Winborn suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

**(Against Riddell, Inc. and BRG Sports, Inc.)**

91. Winborn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. Winborn suffers from a severe injury to his knee.

93. Winborn is disabled.

94. In the alternative, Defendants perceived Winborn as being disabled.

95. Winborn's condition constituted a physical impairment.

96. Winborn's condition substantially impaired one or more of his major life activities, including working.

97. Defendant perceived Winborn's condition to substantially impair one or more of his major life activities, including working.

98. Defendant treated Winborn differently than other similarly-situated employees based on his disabling condition.

99. Defendant treated Winborn differently than other similarly-situated employees based on his perceived disabling condition.

100. On or about July 10, 2019, Defendants terminated Winborn's employment without just cause.

101. Defendant terminated Winborn's employment based on his disability.

102. Defendant terminated Winborn's employment based on his perceived disability.

103. Defendant violated the ADA when it discharged Winborn based on his disability.

104. Defendant violated the ADA when it discharged Winborn based on his perceived disability.

105. Defendant violated the ADA by discriminating against Winborn based on his disabling condition.

106. As a direct and proximate cause of Defendants' conduct, Winborn suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq*.

### (Against All Defendants)

107. Winborn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Defendants violated R.C. § 4112.02 by discriminating against Winborn based on his disabling condition.

109. Defendants violated R.C. § 4112.02 when they discharged Winborn based on his disability.

110. Defendants violated R.C. § 4112.02 when they discharged Winborn based on his perceived disability.

111. As a direct and proximate result of Defendant's conduct, Winborn suffered and will continue to suffer damages.

### COUNT III: FMLA RETALIATION

### (Against Riddell, Inc. and BRG Sports, Inc.)

112. Winborn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

113. Section 2615 of the FMLA prohibits employers from discharging, discriminating or otherwise retaliating against an employee for exercising his rights under the FMLA.

114. FMLA requires employers to provide eligible employees with a maximum of twelve weeks of leave if the employer is a private business engaged in, or affecting, interstate commerce, that employed fifty or more employees in twenty or more weeks in the current or prior calendar year.

115. FMLA provides that an employee who works for a covered employer is eligible for leave if he or she worked for the employer for at least twelve months, and for at least 1,250 hours over the twelve months immediately preceding the need for leave

116. Winborn was employed with Defendants over one year prior to his utilization of FMLA leave.

117. Winborn worked at least 1,250 hours in the preceding year before his utilization of FMLA leave.

118. On June 21, 2019, Winborn applied for leave under FMLA for his own serious health conditions.

119. Winborn was approved for FMLA leave from June 21, 2019 until August 6, 2019.

120. Winborn was terminated on July 10, 2019 without just cause.

121. After Winborn used his qualified FMLA leave, Defendants retaliated against him.

122. Defendants retaliated against Winborn by terminating his employment.

123. Defendants willfully retaliated against Winborn in violation of U.S.C. § 2615(a).

124. As a direct and proximate result of Defendants' wrongful conduct, Winborn is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Darius Winborn requests judgment against all Defendants and for an Order:

(a) Awarding against each Defendant compensatory and monetary damages to compensate Winborn for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount to be determined at trial;

(b) Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

(c) Awarding pre-judgment and post-judgment interest as provided by law;

(d) Awarding reasonable attorneys' fees and non-taxable costs for Winborn's claims as allowable under law;

(e) Awarding the taxable costs of this action; and,

(f) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

/s/Barry R. Murner
Barry R. Murner (0069195)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  barry.murner@spitzlawfirm.com

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff Darius Winborn demands a trial by jury by the maximum number of jurors permitted.

/s/Barry R. Murner
Barry R. Murner (0069195)
**THE SPITZ LAW FIRM, LLC**